UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| CHEROKEE FOREST VOICES | ) | |
| | ) | |
| v. | ) | NO. 2:04-CV-316 |
| | ) | |
| THE UNITED STATES FOREST SERVICE | ) ) | |
| | ) | |

## MEMORANDUM OPINION

The plaintiff in this action has appealed the decision of the United States Department of Agriculture, Forest Service ("Forest Service") to implement two forest management projects in the Cherokee National Forest, better known as the Flatwoods project and the George Creek project. The plaintiff claims that the Forest Service has violated the National Forest Management Act ("NFMA") and the National Environmental Policy Act ("NEPA"). The parties have filed opposing motions for summary judgment along with an administrative record consisting of over 12,500 pages.

The plaintiff claims that the defendant violated the NFMA by applying the prescriptions and standards of the 1986 Land and Resources Management Plan ("Forest Plan") to its decisions to implement the Flatwoods and George Creek

projects rather than those of the revised Forest Plan which became effective shortly after the approval of the projects. The plaintiff also claims that the defendant violated the NEPA by failing to adequately disclose, analyze, consider or address inconsistencies between the revised Forest Plan and the proposed projects.

I.      **FACTUAL BACKGROUND**

The Cherokee National Forest covers approximately 640,000 acres in Eastern Tennessee. Prior to March 1, 2004, the forest was managed pursuant to the provisions of a Forest Plan adopted in 1986. In 1994, the Forest Service began revising the 1986 Forest Plan. After the proposed revision went through the administrative procedure dictated by the NEPA, the final revised Forest Plan was released on January 30, 2004, and became effective on March 1, 2004.

The Flatwoods and George Creek projects, which are the subject of this lawsuit, take their names from two areas of the Cherokee National Forest within which the Forest Service proposes, among other things, the sale of timber, application of herbicides, building of roads, and planting of trees and other vegetation. The Forest Service's stated purpose for these projects include , among other purposes, creating early successional habitat, promoting oak regeneration, maintaining roads and trails, blocking illegal roads and trails, and rehabilitating wildlife openings. The plaintiff's complaint focuses primarily on the timber

2

harvesting and building of roads, both of which are to be achieved through commercial logging. The commercial logging is to be achieved primarily by harvesting shelter wood with reserves[1] on approximately 750 acres and clear cutting of approximately 197 acres.

Public notification for the Flatwoods project was made on October 1, 2002 by a listing in the Schedule of Proposed Actions, and by mailing a scoping letter to 140 individuals, agencies, and organizations seeking comment. On August 1, 2003, the Forest Service released an Environmental Assessment for review and comment. A Final Environmental Assessment ("EA"), Finding of No Significant Impact ("FONSI"), and the Decision Notice ("DN") of the District Ranger adopting the project, were released on December 5, 2003. The plaintiff, Cherokee Forest Voices, appealed the DN/FONSI on January 26, 2004. The forest supervisor affirmed the DN/FONSI on March 12, 2004.

The George Creek project includes shelter wood reserve cuts on approximately 16 acres and clear cuts on approximately 68 acres. The George Creek project was initially proposed to the public on October 20, 1997 by a listing

---

[1] "Shelter wood with reserves" is described as a two-stage regeneration method in which some or all of the shelter trees are retained after harvest to attain goals other than regeneration, such as visual integrity.

in the Schedule of Proposed Actions and by mailing a scoping letter to certain individuals, agencies and organizations for comment. An EA was issued for public review and comment on February 13, 2003. The District Ranger issued a DN/FONSI on January 26, 2004 for the George Creek Project. The plaintiff appealed the DN/FONSI, and the DN/FONSI was affirmed by the forest supervisor on April 20, 2004. The record contains no proof that contracts or other instruments implementing either the Flatwoods or George Creek Plans have been executed.[2]

The record reflects that a Record of Decision ("ROD") was issued adopting the revised Forest Plan on January 15, 2004. The ROD advised of appeal opportunities. However, the record does not reflect the status of any appeal of the ROD.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine issue of material fact." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of proving that no material facts exist, and the court must draw all inferences in a light most favorable to the non-moving party. A court may grant summary

---

[2] Both the plaintiff and defendant have submitted evidence in addition to the record, and each argues that the other's submission is inadmissible. The Court notes that the defendant's extra-record proof mentions the status of bids on the projects, but the Court declines to consider proof outside the record. *See Comp v. Pitts*, 41 U.S. 138, 142-3, 93 S. Ct. 1241 (1973).
4

judgment when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial. *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992) (citations omitted).

In accordance with long standing summary judgment principles, this Court must construe the evidence in this record most favorably for the non-moving party. *E.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88(1986); *Scott v. Clay County*, 205 F.3d 867, 871 (6th Cir.2000). As explained by the Sixth Circuit in *Scott*,

> "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.... <u>The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor</u>." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citation omitted). See also *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Adams v. Metiva*, 31 F.3d 375, 378-79 (6th Cir.1994). (emphasis added)

*Id*. at 871.

Jurisdiction to review the plaintiff's NFMA and NEPA claims are pursuant to the Administrative Procedures Act. 5 *U.S.C.* § 704. In its review, the Court "shall hold unlawful and set aside agency action, findings, and conclusions found

5

to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law . . ." 5 U.S.C. § 706. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, the outcome is not arbitrary or capricious." *Davis v. Kentucky Fin. Cos. Retirement Plan,* 887 F. 2d 689, 693 (6th Cir. 1989). Where the agency's decision is reasonable under the circumstances, the Court is not to substitute its judgment for that of the agency. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).

When the Forest Service's reading of the statutory authority with which it is charged with administering is called into question, the Court must "look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Crandon v United States*, 494 U.S. 152, 158, 110 S. Ct. 997 (1990). An agency's construction of an ambiguous statute which it administers is to be upheld where the construction is reasonable. *See Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837, 842-44, 104 S. Ct. 2778 (1984). Administrative decisions are to be set aside "only for substantial procedural or substantive reasons as mandated by statute . . ., not simply because the court is unhappy at the result reached." *Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc.,* 462 U.S. 87, 97 (1983).

### III. DISCUSSION

### A. NFMA

The Forest Service administers the Cherokee National Forest under the National Forest Management Act of 1976, 16 *U.S.C.* § 1600 *et seq.* ("NFMA"). The Forest Service also promulgates its own regulations, which are published in the Code of Federal Regulations.

The Forest Service is responsible for a Land and Resource Management Plan ("Forest Plan") for each unit of the National Forest System. The Forest Service implements the Forest Plan by approving or disapproving site-specific actions. Proposed actions must be consistent with the Forest Plan. 16 *U.S.C.* § 1604(i). The development of Forest Plans and specific project development must be accompanied by a public review process in accordance with the NEPA. *See U.S.C.* § 1604(d) and (g)(1).

The NFMA provides in § 1604(i) as follows:

> Resource plans and permits, contracts and other instruments for the use and occupancy of the National Forest System lands shall be consistent with the land management plans. Those resource plans and permits, contracts, and other such instruments currently in existence shall be revised as soon as practicable to be made consistent with such plans. When land management plans are revised, resource plans and permits, contracts, and other instruments, when necessary, shall be revised as soon as practicable. Any revision in the present or future permits, contracts, and other instruments made pursuant to this section shall be

subject to valid existing rights.

The plaintiff submits that both the Flatwoods and George Creek projects are inconsistent with the revised Forest Plan, and therefore violate the terms of § 1604(i) which requires that all resource plans, etc., be consistent with the land management plans. In response, the defendant submits that it was not required to comply with a yet to be approved Forest Plan when it developed the projects and that the projects do not have to altered in order to be consistent with the revised plan. Defendant submits that the Record of Decision for the revised Plan makes it clear that pre-existing authorizations, such as the projects at issue, need not be altered to be consistent with the revised Plan. The Record of Decision states in pertinent part as follows:

> In developing this revised [Forest Plan] , implementing pre-existing decisions and the associated effects of that implementation were considered as part of the baseline against which alternatives [for the Revised Forest Plan] were evaluated. Because these earlier decisions were considered in our effects analysis, their implementation is not in conflict with the revised [Forest Plan] . . . NFMA does not require revision of these pre-existing use and occupancy authorizations.

In short, the plaintiff's position is that the defendant, in developing these projects, should have developed them in accordance with a yet to be approved Forest Plan, rather than the 1986 Plan which was in effect. The plaintiff does not

8

cite to any on-point authority in support of this argument, and the argument is clearly contrary to law.

> . . . Section 1604(f)(5)(A) does not prohibit the Forest Service from relying on a plan that it is revising because 15 years have expired or because conditions within a forest have significantly changed. Section 1604(f)(5)(A) does not require the agency to cease forest management activities, including analyzing proposed timber sales while it is formulating a new forest plan. Moreover, other sections of NFMA, 16 *U.S.C.* §§ 1604(c) and 1604(i) reflect congressional intent to permit the Forest Service to manage a forest while it is revising its Forest Plan. Section 1604(c) provides that "[u]ntil such time as a unit of the National Forest System is managed under plans developed in accordance with this Act, the management of such unit may continue under existing land and resource management plans."

*Habitat Educ. Center, Inc. v. Bosworth*, 363 F. Supp. 2d 1090, 1106 (E.D. Wis. 2005).

Thus, the issue before the Court revolves around the requirement of Section 1604(i), that "[w]hen land management plans are revised, resource plans and permits, contracts and other instruments, when necessary, shall be revised as soon as practicable." The defendant argues that Section 1604(i) does not require it to modify the proposed projects nor to create its yet to be executed contracts implementing the projects in such a manner as to make them consistent with the revised Forest Plan. Essentially, the defendant interprets its revised Forest Plan, as reflected in its Record of Decision regarding the revised Forest Plan, to have taken

9

into consideration pre-existing plans in developing the forest plan under which the Forest Service would operate in the coming years. In other words, the Forest Service presumably is arguing that its revised Forest Plan would not have been as restrictive had the Forest Service contemplated that it would be revising all pre-existing authorizations to comply with the revised plan.

It bears mention that the authority cited by the Forest Service for its position, *Forest Guardians v. Dombeck*, 131 F. 3d 1309 (9th Cir. 1997), is inapplicable because it deals with the amendment of a forest plan, not the revision of a forest plan. *See Forest Guardians v. Thomas*, 967 F. Supp. 1536, 1557-58 (D. Ariz. 1997) (differentiating between the amendment and revision of a management plan.) Nevertheless, the Forest Service is entitled to substantial deference in the interpretation of its plan, and this Court must not substitute its judgment for that of the Forest Service. *Forest Guardians v. U.S. Forest Service*, 329 F. 3d 1089, 1098 (9th Cir. 2003) Rather, the Court must determine if the Forest Service acted arbitrarily and capriciously in determining that the revised Forest Plan took into consideration as a baseline the implementation of the Flatwoods and George Creek projects, such that the projects need not be revised under the revised forest plan. *See Davis v. Kentucky Finance Cos.Retirement Plan*, 887 F. 2d 689, 693 (6th Cir. 1989).

It appears to the Court that the issue of compliance with the revised Forest Plan is addressed by the plaintiffs with two main arguments - first, that the Forest Service must modify the projects to comply with the Revised Forest Plan which touches on the previously addressed issue of whether the projects should have, originally complied with the revised Forest Plan), and second, that any future contracts, permits, etc., implementing the projects, must comply with the revised Forest Plan, even if such implementation effectively modifies the projects.

The record reflects that the Forest Service considered the differences in the 1986 Plan and the revised Plan and ways in which the projects might be in conflict with the revised plan despite the language in the Record of Decision regarding consistency. The Forest Service determined that the interpretation of the revised plan proffered by the plaintiff was in error, with the exception of its contention that the Flatwood project violates the riparian corridor under the revised plan. Under the 1986 Forest Plan, the corridor width was 50 feet. There is no dispute the project meets this requirement. Under the revised Plan, the width is 100 feet on either side of the stream, and the Flatwoods project proposes activity within that area. Nevertheless, the revised Plan provides for the variance of this width where a "site-specific inter disciplinary field investigation determines the need to vary the width." Notably, at the time of the filing of the appeal of the administrative

11

decision, the record does not reflect whether any of the projects had been prepared for sale. Accordingly, the Court need not consider whether site specific reviews have actually been completed.

In determining the question of whether the Forest Service's interpretation of Section 1604(i) as not requiring the revision of the projects so as to comply with the revised Forest Plan, the Court must consider whether the interpretation is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 402 U.S. 402, 416, 19 S. Ct. 814 (1971). The Forest Service is entitled to a high degree of deference in its interpretation of the statutory provisions and regulations with which it is charged with administration. *See Navistar Internat. Transp. Corp. v. The U.S. Environmental Protection Agency*, 858 F. 2d 282, 286 (6th Cir. 1988). On its face, neither Section 1604(i) nor the implementing regulations refer to the revision of projects, but only refer to the revision of instruments, "when necessary". This Court finds that it is a reasonable interpretation that § 1604(i) does not require the revision of projects that were approved prior to the adoption of a revised Forest Plan in order to bring them in compliance with the revised Forest Plan. Otherwise, the projects would be in a constant state of flux, having to repeatedly undergo the lengthy process mandated by the NEPA. Nothing on the face of the statute makes

12

it clear that Congress intended such a procedure , nor have the parties cited the Court to any authority for such proposition.

The second question raised by plaintiffs, that of whether the Court may provide the prospective relief sought by the plaintiff, requiring that any contracts, permits, etc. for implementation of the two projects be prepared in such a way to comply with the revised Forest Plan, is an issue that was not raised by the plaintiff during the administrative process. During the administrative process, the plaintiff simply raised the issue of whether the EA was required to consider whether the projects were consistent with the revised Forest Plan. At no time did the plaintiff raise the issue of whether, regardless of the effectiveness of the projects, the contracts issued to implement the projects must comply with the revised plan. Clearly the plaintiff had the opportunity to raise this issue not only in their appeals of the DN/FONSI for the two projects, but also in the process for the implementation of the revised Forest Plan.

In the Record of Decision for the revised Forest Plan, the forest supervisor unequivocally finds that the implementation of preexisting projects is not in conflict with the revised plan. The Record of Decision goes on to find that it has been determined that the revised Forest Plan standards need not be applied retroactively, but that all future permits, contracts, cooperative agreements, and

13

other instruments for occupancy and use of affected lands are consistent with the revised Land Management Plan. The Record of Decision notifies the interested parties of their rights of appeal of the decision, and the plaintiff admits to being involved in that process as well, but there is no evidence before the Court that an appeal of this issue was filed by the plaintiff. Because the issue of the manner of implementing the projects was not raised on the administrative level, the Court many not grant the prospective relief sought by the plaintiff.[3] *See Davidson v. United States Department of Energy*, 838 F. 2d 850, 855 (6th Cir. 1988); *See also Coalition for Government Procurement v. Federal Prison Industries, Inc.*, 365 F. 3d 435, 462-63 (6th Cir. 2004). In short, the plaintiff's violation of the NFMA boils down to different interpretations of what activity is authorized under the revised Forest Plan. This Court cannot find from review of the record that the interpretation proposed by the Forest Service is arbitrary or capricious.

Accordingly, summary judgment will be **GRANTED** to the Forest Service on the NFMA claim.

    B.    **NEPA**

---

[3] The plaintiff indicates in its memorandum that it has filed an administrative appeal of the Revised Forest Plan. The plaintiff does not indicate if the issue of the retroactive application was raised. Nevertheless, the issue is not before the Court as it was not raised in the administrative appeal of either project.

14

The NEPA requires federal agencies to prepare an environmental impact statement ("EIS") for "major federal actions significantly affecting the quality of the human environment."  42 *U.S.C.* § 4332(C); *Southwest Williamson County Cmty. Ass'n., Inc. v Slater*, 243 F. 3d 270, 274 (6th Cir. 2001).  The NEPA does not mandate specific results, but only that the agency follow the necessary process in accessing the environmental effects of its projects.  *Robertson v. Methow Valley Citizen's Council*, 490 U. S. 332, 350 (1989).  The Court may not substitute its judgment for the judgment of the agency, but rather must determine whether the defendant "has, in fact, adequately stated the issue and taken a 'hard look' at the environmental consequences of its decision."  *Kelley v. Selin*, 42 F. 3d 1502, 1518-1519 (6th Cir. 1995).

NEPA regulations provide that an agency may first prepare an EA determining the need to prepare either an EIS or a FONSI.  40 *C.F.R.* § 1508.9.  In this case, the defendant prepared an EA which concluded that an EIS was unnecessary, and a FONSI was issued.

The plaintiff contends that the Forest Service has violated the NEPA in failing to consider or address the revised Forest Plan in the EAs for the Flatwoods and George Creek projects.  To accept the plaintiff's argument, this Court must require the Forest Service to speculate, in developing its projects, about what future

15

policy changes might take place, and presupposes the adoption of the revised Forest Plan. Neither party has cited to any authority directly on point for this proposition. The most compelling argument proffered by the plaintiff is that the revised Forest Plan might be considered as significant new information to be evaluated in a supplemental NEPA process pursuant to 40 *C.F.R.* § 1502.9(c). However, the Court finds the argument of the defendant more compelling, that is, that the revision of the Forest Plan is not the type of "new information" triggering the need for a supplemental NEPA assessment.

A supplemental NEPA assessment is required where the "remaining action will 'affect the quality of the human environment' in a significant manner or to a significant extent not already considered." *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 374, 109 S. Ct. 1851 (1989). Plaintiff has failed to show that the revision of the Forest Plan changed the potential impact of the projects on the human environment in a significant manner. Rather, the information available to the Forest Service in the development of the projects would have been the same information available to the Forest Service in the development of the revised plan.

To some minor extent, the plaintiff alleges that the Forest Service examined an inadequate range of alternatives in violation of the NEPA.

> Common sense also teaches us that the "detailed statement of alternatives" cannot be found wanting

> simply because the agency failed to include every
> alternative device and thought conceivable by the mind
> of man. Time and resources are simply too limited to
> hold that an impact statement fails because the agency
> failed to ferret out every possible alterative, regardless of
> how uncommon or unknown that alternative may have
> been at the time the project was approved.

*Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 551, 98 S. Ct. 1197 (1978).

For each project, the Forest Service discussed five alternatives, including a "no action" alternative and four action alternatives including various ranges of timber harvesting and harvesting methods. The EA is intended to be "a *concise public document*" that "*[b]riefly* provide[s] sufficient evidence and analysis for determining whether to prepare an environmental impact statement or a finding of no significant impact." 40 *C. F. R.* § 1508.9(a)(1) (emphasis added). A review of the environmental assessments for both projects reflects that this is precisely what the Forest Service did. While the parties may disagree as to what alternatives should have discussed, the Court cannot find that the range of alternatives considered is unreasonable or that the plaintiff acted arbitrarily and capriciously in the preparation of the EAs and DNs. It is the opinion of this Court that the defendant has taken the requisite "hard look" at the environmental consequences of these projects as required by the NEPA. For the foregoing

reasons, an order will enter granting summary judgment in favor of the Forest Service on the NEPA claim.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE